We're going to take a minute for Jonathan to help us unwind this. So, are we ready, Stephanie, do you think, I guess Jonathan? Great. Good morning. I'll call the case of United States of America versus Mordechai Korf and others. Good morning. Howard Srebnik Good morning, Your Honor. I'm Howard Srebnik. I represent the Optima family companies and related individuals whose attorney-client-privileged material are currently in possession of the United States following the execution of a search warrant. Those attorney-client-privileged materials are currently subject to a lower court injunction which granted, in part, the motion filed by the clients, by the movements. The question presented today before the court is what procedure, what process should be put into place to ensure that even after the government takes possession of privileged materials, and there's no doubt the district court agreed they were potentially privileged material, should a so-called tank team that acquired the materials continue to review those materials as part of the process to adjudicate attorney-client privilege. So, to be clear, as we sit here today hearing the case, the materials are safe. They're in the possession of the government. There's no risk of spoliation. The district court agrees and the government has not appealed. There needs to be a process by which those materials are adjudicated for privilege. Those materials include communications between the clients and their litigation counsel for the last two years over a case in Delaware of which the subject matter is identical to the investigation being conducted by the United States. Just to be clear, and I'm sorry to interrupt, but it wasn't clear to me, the materials that have been seized by the government and are subject to this protocol, have all of them yet gone through the protocol or are there some that remain to go through the protocol? They have not gone through the protocol. Thank you. Much of the material wasn't even copied and made available to the movements, to the clients until recently because there's so much volume of electronic materials. That's why I was asking because I know that part of the protocol was that it was to be made available within 48 hours, I think, of when the government processed it. The processing has taken months and we've allowed the taint team, so to speak, to process it, simply meaning to reproduce it without looking at it. And what we've proposed and what we've proposed to the district court is a procedure that is almost identical to the procedure contemplated by Rule 26B5 of the Federal Rules of Civil Procedure and by Rule 45E of the Federal Rules of Civil Procedure when there's a discovery dispute in a civil case over whether a particular item is privileged or not. The movement, the client, prepares a privilege log. Opposing counsel gets a copy of the privilege log. And if there's going to be a challenge to an assertion of privilege over a particular document or electronic communication, the opposing party, in this case the government, could voice its objection to a magistrate judge. And the magistrate judge would resolve the dispute without giving the government, the opposing counsel, an opportunity to look at the document as part of the process to adjudicate the claim. This happens every day in civil cases. That's exactly what we've proposed should happen when the government seizes materials. Mr. Shriver, if I could fast forward a little bit. Your proposal sounds perfectly reasonable, and I can imagine a judge adopting a proposal like that. But the question before us is a little different than that. It is, is there a substantial likelihood of success on the merits of your claim that the protocol here is unconstitutional or illegal in some way? So what's the basis for us finding that there's a substantial likelihood of you succeeding on the merits of that, of the claim in your injunction? I would begin with the Supreme Court case of United States v. Zolin, which we've cited. That's a case where the Supreme Court said that even before a judicial officer looks at a document that is assertedly privileged, opposing counsel must make a prima facie showing that the document is not privileged or that it is subject, for example, to a crime-fraud exception. Footnote, there's been no claim of crime-fraud in this case. There's no claim that litigation counsel, for example, in the Delaware case has engaged in any kind of crime-fraud. It's just traditional litigation. And so my answer to your question, Judge Luck, is that it is obvious that the privilege will be intruded upon if, as part of the process, opposing counsel gets to look at the document. Well, you say opposing counsel, and I understand why you say opposing counsel. But the law seems to treat the government as a litigator very differently than it treats others. And let me give a couple of examples. And I want you to tell me why this would not be a case or why we can't analogize to these things. For instance, under the rules of professional responsibility, when a government lawyer leaves the government and goes to a firm, that lawyer is not attributed with all of the cases that that office or the entire government had, right? It's only those cases that that person worked on that that lawyer would be recused from. That's very different if you hire a lawyer from one law firm to another, right? That lawyer is precluded from working on just about anything that that firm has because the assumption is that that lawyer had information from that entire firm. So the rules treat government lawyers different. Let me give you another example. In Brady, the definition of a prosecution team doesn't include every single lawyer in the entire Department of Justice. It includes those lawyers who would reasonably have information that would bear on the issue that was material for turning it over. So, for example, if a lawyer, if an AUSA in Alaska did a debrief that John Doe was implicated in a bank robbery and then 10 years later an AUSA in the Southern District of Georgia was prosecuting John Doe and didn't turn over the fact that he had been implicated in a bank robbery 10 years earlier, that would not be, I don't think, and maybe it would be a Brady issue because there's no way prosecutor in Southern District of Georgia could know about the debrief that happened earlier or the memo to the file from 10 years earlier. In other words, we don't assume that every lawyer in the entire government of the United States knows everything that every other lawyer in the government of the United States knows. Why would that be different here? In answer to your Brady question, I'm not so sure and I'd be happy to do a follow-up.  I think the government is saddled under Brady with the obligation to turn over anything within the government's possession. There may be no ethical violation by the prosecutor in Miami who doesn't know about the information in Alaska, but the Brady obligation remains the same as I understand it, but I haven't researched it for today and I haven't updated my research. I also understand that if the U.S. attorney leaves the government and goes to work for black and white, that law firm cannot then represent anyone that that U.S. attorney was prosecuting. That would be unseemly. Right, but not everyone in the office was prosecuting. Not every case is attributable to that prosecutor. But if your point is that the rules for disqualification may be different for a prosecutor when he leaves government, that may be the case because I'm quite sure that the government would not approve if I appointed my partner Roy Black to be part of a so-called tank team to look at documents in the government's possession and we assured the government that Black won't give me a copy of the documents because we're going to create a Chinese wall within my law firm. The question today though is, is the privilege of such a character, and I think it is under Zolan, that no one from the government should be looking at privileged material until a judge has adjudicated that it's not privileged? And I've proposed a solution to the government's problem if they feel that Magistrate O'Sullivan, a former federal prosecutor, 30 years of experience, cannot on his own determine whether when I say judge, this document from client to lawyer equals privileged, and they think that Judge O'Sullivan cannot make that assessment on his own, they'd like to have an advocate challenge my assertion. We've even volunteered as a fallback, let them appoint, let the court appoint someone not in the government, could be a former federal prosecutor on the CJA list, it could be anyone independent of my adversary. It is unseemly to think that there's going to be a division within the government that has looked at my client's records. If that person though is allowed to look at the records, in other words, if some special master in line with what you're suggesting is able to look at it, then I'm having trouble understanding why someone who is not involved in the case, who has been directed and ordered by a court not to be involved, who's in a different office than the other person, who's in a different division than the other person, doesn't even do criminal cases, is completely separate. Why that is constitutionally or lawfully different? I'm having trouble getting there. Well, first, that's our fallback position. We think no one should be looking at it. It's already problematic under Zolan that a judge is looking at it. But if we're going to give the judge an aide, a law clerk, a special master, call that person, any title you want to give that person, that person cannot be part of the engine that is looking to take my client's property away, put them in prison, and otherwise disrupt the rest of their life. Now, let me, if I could just get to the point, that role played by that so-called special master is a quasi-judicial role, and it would have to be occupied by someone totally independent. The idea that the government is going to get a pinch hitter to try to convince Judge O'Sullivan that my assertion of privilege should be overruled, that's a lot to give them, more so than any other litigant. On the success and the merits, there is a lot of case law, admittedly not from our court, but around the country in district courts, including even the Sixth Circuit, which seemed to have blessed this in DICTA, clearly, but in the context of saying in a Taint Team or a Search Warrant context, this seems to be what the procedure should be. How do we say that this is a substantial likelihood of success on the merits, even if you're right in the end? Because they're wrong now, and we should be right in the end. And understand how Taint Teams developed. I think I may have been involved in the very first case in this district on Taint Teams. It was the United States versus Abel, that old, 1995 search of Mr. Abel, a lawyer's office. Judge Hoover recognized that the Taint Team, which had acquired the materials, they served their purpose. The materials were now safe and sound in the possession of some government involved. The government seems to suggest that there seems to be a difference in the case law for law firms, which have very, very special things, versus a regular search warrant that may have some privileged information attached to it. So the Fourth Circuit case that you rely on, that was a law firm, and 98.8 percent, 99 point, some very large percentage, had absolutely nothing to do with the case at hand. Right. They don't have that case. But how the government has come into possession of the privileged material is totally irrelevant, whether they got it from my client's lawyers or got it from my clients through the other side of the email chain. What difference does it make how the government came into possession of it? They know they've got privileged material. They're not allowed to look at it. I see that my time is up. I'd reserve time for rebuttal. Thank you. Good morning. May it please the court. Shai Bronstein for Appellee of the United States of America. The court should dismiss this appeal because it lacks jurisdiction. The motion that gave rise to the order on appeal was based on Rule 41G of the Federal Rules of Criminal Procedure, which addresses the return of seized property. But in this case, there was an injunction that was sought. I mean, that was the motion, right? Your Honor. I agree with you that originally it started out as a Rule 41G, but we're here on the denial of a motion for injunction. So why don't we have jurisdiction? Your Honor, the reason for that is the basis for the initial request was Rule 41G. Although the arguments were based on the standard for granting a preliminary injunction, that is the rule under which the appellants are proceeding. And as DeBella held, there are very good reasons why there are not pre-indictment appeals of these sorts of rulings on Rule 41G motions. DeBella was concerned with creating a piecemeal system of litigation where if there was a motion for the return of property under 41G— Didn't DeBella carve out and said, yes, but there are exceptions, and it specifically listed 1292 as an exception? God bless you. Your Honor, yes. DeBella did recognize that there are carve-outs because under that case, the question was whether it was a final order. And DeBella—the Second Circuit had ruled that it was a final order. DeBella reversed that and said that it is not a final order if it is just—if it is a motion for suppression, essentially. But the court in DeBella did not say that these sorts of motions can then come up under 1292. And as the courts of appeals, the Seventh Circuit and the Third Circuit in particular, in the Dorfman decision and in Wray Grand Jury, recognized, if these sorts of motions that deal with suppression issues, that deal with privilege issues, are allowed to be immediately appealable, then that will lead to all sorts of piecemeal litigation. Anything could be, as the court said, baptized as a motion for an injunction when it's really—what it's trying to do is limit the quantity of evidence or the review of evidence that the government has seized under a search warrant. So you're saying the character of this injunction is really some sort of suppression or some—essentially it's mischaracterized. Is that the government's argument? That is the government's honor, Judge Luck. Effectively, what they're asking is to limit the government's use and review of these materials. And the Third Circuit case in Wray Grand Jury— Although it's a Sixth Amendment claim, not a Fourth Amendment claim. That's what they're arguing. It's a Sixth Amendment claim, right? I mean, it's not a Fourth Amendment, so that's why suppression wouldn't necessarily be a remedy here. That's correct, Your Honor. It is a Sixth Amendment claim here, effectively, rather than a Fourth Amendment claim. But the same principle holds true. And if this were, for instance, a post-indictment motion to limit the government's review of documents, there would not be an immediate appeal. It would be lumped into the rest of the trial proceedings, and then it would only be appealable after there was a decision. But that would be a different posture because then there would already be an indictment, and the documents would have already been used to obtain the indictment, right? So you would be seeking suppression. Again, Fourth Amendment. But here, there is no indictment, and they are seeking to prevent anybody from looking at documents that they claim are protected by the attorney-client privilege, Sixth Amendment derivation. That's correct, Your Honor, but their claim would, I believe, still be under the Sixth Amendment, even if it were a post-indictment-type issue. They would say that the government improperly looked at their privileged materials, and therefore they presumably would raise the same types of arguments. Now, we don't think that those Sixth Amendment arguments have validity. Well, I'm sorry. Maybe it's just me, and I'm confused. That could certainly be the case. But presumably, if there's a post-indictment claim, they've already looked at the documents, right? So it's too late. I mean, the cat's already out of the bag. Here, that's why I asked the questions of Mr. Shrebnik at the beginning. You guys haven't looked at all of the documents yet. I mean, they've been processed, but they haven't been reviewed. And so in the post-indictment situation, as a practical matter, the only relief that's available is suppression, right? I mean, that's just a practical matter. Well, Your Honor, there could be other sorts of relief as well. What is, as a practical matter, what else would be available? As a practical matter, there could be the dismissal of an indictment. There could be disqualification. Okay, but that's pretty much not going to happen. I mean, you know, unless there was some kind of bad faith conduct or something, that's just not going to happen. I mean, as a matter of reality, we're probably talking about just suppression. And that's very different, I think, from the situation before there's an indictment and before the government has had an opportunity to review the documents. Your Honor, I think what that question gets to is actually the core of the issues that Judge Luck was raising before, which was the absence of harm here. Because those issues— Right, so then that gets us to the merits, I guess, right? That does get us to the merits. And so while the government believes that DiBella does apply and that this is, while it's not a suppression motion, it's within that wheelhouse of there shouldn't be, just because it's the fortuity of a pre-indictment motion, this immediate appealability, on the merits, the government believes there's no question that this court should affirm. What Mr. Shrebnik is essentially saying, what the appellants are saying here, is that filter processes, filter reviews in general, are impermissible. And no court has ever gone that far. Even the Fourth Circuit, which was very, of course, unfriendly to the filter review in that case, did not say that filter reviews are impermissible. And the reason is there's simply no harm from a filter review. A neutral is a neutral. Mr. Shrebnik says that's not the case. Mr. Shrebnik says, and he uses his own example, if the situation had been reversed, that for whatever reason Mr. Shrebnik got a search warrant for the government offices and documents were taken back, and the process by which he obtained the warrant said, don't worry, I won't say any privileged material that was in the government office because my law partner is taking a look at all this and he's going to make sure, and he promises not to say anything to me. That's his argument. Why is that not the same for the government? Your Honor, it's different for several reasons. First of all, a search warrant is obviously a special case. Here, the court has already been involved in two different gatekeeping functions. First of all, it's found probable cause that the materials that are going to be searched and seized contain evidence or fruits of criminal activity. And the importance of that probable cause finding shouldn't be understated. Based on probable cause, we allow the government to restrict people's liberty and to take their property. But the court has also had the opportunity as a gatekeeper to approve this filter process. And so the magistrate judge considers that process and determines what it thinks is right. Now, as Fourth Circuit says, though, that part of the problem there was the ex parte nature of it all. In other words, you establish this process without getting any sort of feedback. And in fact, here the feedback was quite helpful because I think everyone came to whether I know the government didn't necessarily agree, but at least came to an agreement that seemed to balance the interests of both sides. In other words, the adversarial process worked. Assuming we had an ex parte, or at least we originally did here, how is that not problematic in the same way the Fourth Circuit discussed? Well, Your Honor, there's different types of search warrants. Of course, this search warrant the appellants were well aware of, but there are obviously other search warrants in different circumstances that the targets of those searches are not aware of. If there's a search warrant of e-mails, things like that. And it may be very important to the investigation that those warrants, the fact that the government has those e-mails as investigating along those lines, is not made known to the targets of the search. And so while the government's policy, DOJ policy, is to consult when search warrants are known and that's possible and try to come up with a filter process, sometimes it's not possible. And in fact, the government actually did reach out at the very beginning following the search. It reached out to defense counsel and asked for search terms and other ways to restrict the potentially privileged materials to make sure that the filter team was blocking those off from the case team. Let me ask you a question. You had mentioned that this is different from the situation that, or the hypothetical that Mr. Srebnik proposed, because there's already a PC finding because there's a search warrant. But the PC finding didn't go to the attorney's materials, did it? Your Honor, it went to the materials that were in that office that related to the business transactions. And so far, of the many- Including the attorney's materials? So if the documents are actually privileged, those would not end up being evidence. That's correct. So how does that help us distinguish it? Well, the probable cause finding was relevant to the search. That's what allowed them to search that office and the whole suite of offices. Right, but we're only talking about documents that arguably are privileged because they're attorney-client communications. That's correct. Those documents would be the ones that were evidence. But the question is how to determine which documents those are. Sure, but I guess I'm talking about a narrower issue here. I'm just picking up on Judge Luck's question where he asked you, why is it different for the government than if we had the scenario that Mr. Srebnik proposed where he said, well, how about if my partner goes ahead and reviews these documents? And you said, one of the things you said, was because there's a PC finding here. And on the surface, that is somewhat appealing, except for the fact that the PC finding doesn't go to the attorney's documents, which are the subject of the motion to enjoin, the motion for injunction, unless I'm missing something. I may be missing something, so that's what I'm kind of asking you. And there may be other reasons also why it's different. But with respect to this particular reason, I'm not sure I'm seeing it. Well, Judge Rosenbaum, as to that, it's a bit of a chicken and egg problem, right? Because if the documents are not privileged or if an exception applies, then they're properly reviewed by the government. And so those would be covered by the PC. And so I suppose it's a bit of – But then wouldn't you have to have a crime fraud exception or some other exception that's applicable? If there were either a crime fraud exception or some exception, yes, that's correct. And so your position is that you couldn't ascertain whether there was a crime fraud exception that is applicable unless you reviewed the documents? Effectively, that is what we're saying. Not that it would be impossible. Although I guess a special master or a magistrate judge could if you were to challenge it. Well, I think, Your Honor, and as the Grant case in the Southern District of New York discussed, it's very hard without actually looking at documents with only looking at a privilege log to make those determinations. And the benefit of having a filter attorney is that it's a one-way street and they obviously can't inform the case team of anything they see. Yet Mr. Shrebnik is not wrong that that is the procedure in civil cases all the time. And judges litigate that stuff and parties have to make objections based on the information on the privilege log. Now, you can quibble about the specificity of a privilege log. Sometimes there's not enough information from which to lodge an objection. But that is how it's done in civil court. Why is that not a sufficient protection for exactly what we're talking about without disclosing the document itself? Because, Your Honor, I think the fact that it comes from a search warrant makes this a special situation. Number one, in a subpoena in a civil case, the documents are not already with the government. Number two, as I mentioned, the magistrate judge hasn't found PC to review these. It hasn't done this gatekeeping function. And number three, the essence of the crime-fraud exception is very difficult to point out, as those district court cases note, without seeing those, with only seeing a privilege log. So are you saying that the government is in a special position to recognize when the crime-fraud exception is applicable? That's exactly right, Your Honor. What about the fact that it's a taint team that's not involved in the investigation, so it doesn't know? So the case team can provide information about the investigation to the taint team. So the taint team—that's what I've said. It's a one-way street. So the taint team cannot provide information to the case team. But the case team can say, you know, these sorts of lawyers may be involved in crime-fraud. These are the issues. In this case, when the government asked for a list of attorney names, we were provided with approximately 60 different attorneys or law firms. There are a lot of different lawyers here. There are a lot of different aspects to the investigation. And so a special master or the court would simply not be in a position to review those. Additionally, already the appellants have designated approximately 16,000 documents as privileged. And so this is a massive amount of documents. Mr. Shrevnik cited the Abel case. In that case, the trial was delayed for approximately two years while the special master was doing his review. In other cases, such as the Cohen investigation in New York, that special master review cost approximately a million dollars. So there are serious time and cost constraints here to allowing this investigation to go forward. And so that's why the filter review is necessary here, to be able to look for those exceptions in a position that the court or a special master simply would not be able. In addition, as to Mr. Shrevnik's point about using a CJA panelist or someone at his firm as an alternative and how the government wouldn't be okay with that, there is a presumption, as the Supreme Court held in the Armstrong case, of regularity which applies to prosecutors. As Judge Luck identified, prosecutors ethically are treated differently. There are different standards. And while no one would cast aspersions on anyone in this case, simply put, in the defense camp, there is an incentive to be zealous advocates and to obviously take as broad a view as privilege as possible. The Taint team does not have those incentives. They don't benefit financially or otherwise from doing this job. All they are supposed to do is do an effective filter review. And for those reasons, we would ask the court to affirm. Thank you. Thank you. Judge Rosenbaum, the government still hasn't answered the question of why members of the Department of Justice are uniquely qualified to invade my client's privilege as part of their title as Taint lawyers. Well, they've suggested that the Taint team would have information or would be given information about what the investigation entails, and they would therefore be in a unique position to identify whether something qualifies under the crime fraud exception. So too would Magistrate Judge O'Sullivan, if he was the judicial officer determining privilege. So too would be an independent, if necessary, special master who doesn't work for the government. And I hear where you're coming from on this. And sometimes crime fraud privilege, crime fraud exception, I guess, is readily identifiable. Their argument, and it may or may not be right, and so I want to give you a chance to address it, is that you wouldn't go and speak to the special master or the judge about what your investigation was concerning and get into great detail about what you were looking for. And they might not review other evidence that was brought in, but you could do that with a Taint team. And so they would have unique information. So that collides directly with the United States versus Zolan in the Supreme Court that said even a judge can't look at the material to make a determination of crime fraud until the government makes a prima facie case, educate the judge of why the investigation suggests that the Kasowitz Law Firm in Delaware is committing crime fraud. And there's no allegation of it in this case. So we're on a detour to the left here because there is no suggestion of crime fraud on this record, zero. And so the answer to your question is that the government can, if need be, educate the magistrate. The government can, if need be, have a special master who presumably is just as ethical as a prosecutor. And I was a clerk to Judge Goldberg many years ago. He told me the story of a lawyer who said, well, the government is held to a different standard. And Judge Goldberg from the bench said, is that a higher standard or a lower standard? Well, we hold all lawyers to the same standard, whether they work for the government or they work for my law firm or they work for some law firm that has no connection to this litigation. The civil division of the Department of Justice has moved in federal court here to forfeit property belonging to my client. We are in an adversarial posture against the United States government's criminal division and civil division. And they want to appoint some newbie at the Department of Justice who's in the civil division who then will recruit team members to look at my client's documents. It's unseemly. It can't be done, consistent with the Supreme Court case of Zolan. And let's remember, the privilege, the attorney-client privilege survives death. Even if the government never uses the documents in litigation. Under Swidler Berlin, the privilege holder is entitled to know that no one, no one but an attorney who he has chosen or in limited circumstances under Zolan is going to review privileged materials. If there are no further questions, we submit the case. Thank you for your presentation. We have the case.